IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:07CR211 |
| ) | |
| v. ) | |
| ) | |
| MAURICE L. COLEMAN SR., ) | MEMORANDUM AND ORDER |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant's motion to suppress, Filing No. 19. The defendant seeks suppression of statements made to law enforcement officers on June 1, 2007. He argues that his statements and waiver of *Miranda* rights were not voluntarily made and were the result of improper tactics and coercion by law enforcement officers. The defendant is proceeding *pro se*. The court held an evidentiary hearing on December 20, 2007.

**I.   FACTS**

At the hearing, Douglas County Deputy Sheriff Thomas Flynn testified that he was called to assist in serving a protective order and warrants on the defendant at 3809 Miami on June 1, 2007. While the officers were attempting to serve the warrants, they were charged by a pit bull. The officers shot at the dog and then tracked the dog. They were told that the dog had menaced the neighborhood for several weeks and had attacked a mail carrier. After locating and retrieving the dog, the officers returned to the house. A vehicle entered the driveway and a man, later identified as the defendant's father, exited the car. Shortly thereafter, the garage door opened and the defendant came out, waving a white shirt over his head. The officers approached the defendant with weapons drawn, ordered him to the ground, and handcuffed and searched him.

The defendant complained of back pain and had scratches on top of his head. Defendant stated that he had been in a car accident, but did not provide any details.

Deputy Flynn contacted the Omaha Police Department and learned that Coleman was a suspect in a felony hit-and-run accident that had occurred three or four days earlier. Coleman was then transported to Creighton University Medical Center. Deputy Flynn testified that defendant stated he was not on medication nor had he consumed any narcotics.

Deputy Flynn testified that he has been trained to recognize when suspects or detainees are under the influence of alcohol or illicit substances and that the defendant did not appear to be under the influence. He observed Coleman's balance, odor, eyes and speech.

Deputy David Heins also testified at the hearing. He testified to essentially the same sequence of events as Deputy Flynn. He also stated that the defendant did not appear to be impaired at the time of the encounter. Deputy Heins testified that Coleman seemed rational, responded appropriately to questions, and walked normally out of the garage. He recalls that Coleman complained of back pain, but did not walk with a limp. He testified Omaha police officers were at the hospital when the squad car arrived there. Coleman was treated and released to police custody.

Detective Arthur Brumfield of the Omaha Police Department also testified at the hearing. He stated that he was part of the "Safe Streets" task force, which investigates gang activity. One of the subjects of the investigation was Ray Webb, who had been linked through phone records to Maurice Coleman. The task force had investigated Coleman and had made several controlled buys of illicit narcotics from Coleman. Detective Brumfield testified that the police had enough evidence for a search warrant or to arrest Coleman, but that they wanted to continue the investigation to obtain more evidence against Webb.

Detective Brumfield testified that he was called by the traffic unit and he interviewed Coleman. Coleman was given *Miranda* warnings. See Filing No. 46, Exhibit List, Exhibit ("Ex.") 1, Rights Advisory Form. Detective Brumfield testified that Coleman complained of back pain and winced at one point in the interrogation, but did not appear to be in obvious

distress. Further, the officer testified that Coleman did not appear to be under the influence of drugs or alcohol. Coleman may also have complained that he was tired, but did not appear to be obviously so. Detective Brumfield also testified that Coleman was cooperative. He described Coleman's demeanor as "disgusted with himself." In the course of the conversation, Coleman admitted dealing drugs. On cross-examination, Detective Brumfield testified that he told Coleman the task force was interested in Ray Webb, but denied making any promises that Coleman would not be prosecuted. He further testified that Ray Webb had been killed before he could be further investigated or indicted.

The interview was videotaped. The videotape of the interview was admitted as evidence and the court has reviewed the videotape. *See* Filing No. 46, Exhibit List, Ex. 2. The videotape essentially comports with the testimony of the officers. Detective Brumfield told Coleman that Ray Webb was the target of the investigation and encouraged Coleman to cooperate in obtaining evidence against Webb, but made no promises not to prosecute Coleman. The court finds that the videotape evidence does not show that Coleman's statements were coerced or involuntary or that Coleman was under the influence of medication, illicit drugs or alcohol.

**II.  DISCUSSION**

It is the government's burden to establish by a preponderance of the evidence that a suspect's statements were made voluntarily. *Colorado v. Connelly,* 479 U.S. 157 (1986); *United States v. Shan Wei Yu,* 484 F.3d 979, 985 (8th Cir. 2007). The appropriate test for determining whether a statement or confession is voluntary is whether it was "extracted with threats, violence, direct or indirect promises, such that a person's will and capacity for self-determination is critically impaired." *See United States v. Gipp*, 147 F.3d 680, 683 (8th Cir. 1998). In making that determination, a court examines the totality of circumstances in assessing the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess. *Wilson v. Lawrence County,* 260 F.3d 946, 952 (8th Cir.

2001) (stating that voluntariness is determined by the totality of the circumstances, taking into consideration both the conduct of the officers and the characteristics of the accused).

Questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne. *See United States v. Ingle*, 157 F.3d 1147, 1150 (8th Cir. 1998). Though "not condoning such tactics," the Eighth Circuit finds that police "misstatement of the purpose of the interrogation," and "untrue suggestions of eyewitnesses" do not amount to unconstitutional coercion. *See Evans v. Dowd*, 932 F.2d 739, 742 (8th Cir. 1991). Even confessions procured by deceit have been held voluntary in a number of situations. *See, e.g., Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (confession obtained by false statement that co-conspirator had confessed); *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989) (creating fear of imminent arrest does not make statement involuntary); *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir.1990) (agents' threats of long prison sentence did not make statements involuntary); *Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir. 1988) (confession voluntary even though defendant with below-average IQ was subjected to seven and one-half hour interrogation with agent who played on his emotions). For trickery or a ruse to amount to coercion, the conduct must generally be egregious. *See, e.g., Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (confession obtained with false threat to take a suspect's child away from her if she did not cooperate); *Spano v. New York*, 360 U.S. 315, 323 (1959) (police use of childhood friend to extract murder confession from borderline retarded and mentally ill suspect). That the police informed the defendant of his rights is an aspect of the totality of circumstances that a court will consider. *See Evans,* 932 F.2d at 742 (noting that "it would be difficult to conclude that the police coerced the confession while at the same time warning [the defendant] that he need not say anything").

The record shows that Coleman had no special vulnerability that would affect the capacity of his will to be overborne. There has been no showing that he was ill, injured,

4

medicated or under the influence of mind-altering substances at the time of the interview. He had been examined and released from the hospital. He is articulate and intelligent. He was familiar with the criminal justice system. The court's review of the videotape of the interview does not support Coleman's contention that he was incapacitated during the interview and not capable of knowingly and voluntarily waiving his rights. In the context of this case, Detective Brumfield's statements concerning Coleman's cooperation vis-a-vis Ray Webb do not show the sort of trickery or ruse that would cause the will of a defendant, especially one familiar with the criminal justice system, to be overborne. For a law enforcement officer to imply that a defendant's cooperation may favorably impact the defendant is more in the nature of a realistic assessment of a defendant's predicament—representing a choice between unpleasant alternatives—than a trick or ruse. The subsequent failure of that cooperation to inure to Coleman's benefit (as the result of the death of Ray Webb) does not operate to vitiate the voluntariness of his statements.

This court credits the testimony of the law enforcement officers that they believed that Coleman was not under the influence of medication or drugs at the time of the interview. This court's review of the videotape shows that the officers' beliefs were reasonable. The police officer conversed with Coleman for close to an hour and Coleman's responses to questioning were appropriate. The fact that incriminating statements are motivated by a defendant's desire to avoid prosecution through cooperation with a criminal investigation does not make the statements involuntary. Accordingly,

IT IS ORDERED that Coleman's motion to suppress (Filing No. 19) is denied.

DATED this 18th day of January, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

5